IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHEILA ANN HARDERSON                                       PLAINTIFF

V.                                  NO. 14-2152

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sheila Ann Harderson, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed her application for SSI on June 22, 2011, alleging disability since May 6, 2007, due to "anxiety/depression." (Tr. 138-145, 164). An administrative hearing was held on September 27, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 27-54).

By written decision dated April 18, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – hypertension, obesity, back pain, and effusion of the left knee. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did

1

not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of medium work as defined in 20 C.F.R. 416.967(c). (Tr. 19). With the help of a vocational expert (VE), the ALJ determined Plaintiff was capable of performing her past relevant work as a presser. (Tr. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which, after considering additional evidence, denied the request on May 30, 2014. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 11. 12).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Evidence Presented:**

Plaintiff was born in 1970, and completed the tenth grade. (Tr. 165, 171). At the hearing held before the ALJ on September 27, 2012, the ALJ stated that as much as Plaintiff's previous case was on appeal, he would take into account the record that is

3

available to him including the material from the entire span from 2007 until present. (Tr. 30). Accordingly, the Court has considered Plaintiff's records from 2007 in making this recommendation.

Plaintiff complained of back pain in 2007, and an MRI of her lumbar spine revealed right sided disc protrusion/extrusion at the L4-5 level. (Tr. 362, 370). In September of 2009, Plaintiff presented to Johnson Regional Medical Center, complaining of chest pain. (Tr. 371). She was to follow up with her primary care physician. On September 30, 2009, Plaintiff presented to Clarksville Medical Group for evaluation of her chest pain. (Tr. 316). On October 5, 2009, Plaintiff saw Clarksville Medical Group again for evaluation of chest pain, and was told to stop taking Zoloft. (Tr. 272-273). Also on October 5, 2009, a CT of Plaintiff's chest was negative. (Tr. 307). Plaintiff presented to Johnson Regional Medical Center on October 13, 2009, complaining of her heart pounding and vomiting, and the diagnosis was nausea and vomiting, with a note to consider her gallbladder. (Tr. 315). A gallbladder ultrasound was performed on October 14, 2009, and there were no findings for cholelithiasis or cholecystitis. (Tr. 318). Dr. Robert Noonan, of the Clarksville Medical Group, saw Plaintiff on October 16, 2009, and reported that she was feeling better, but was still slightly fatigued. (Tr. 268). Dr. Noonan reported that her chest pain was resolved, and that she had anxiety. (Tr. 269).

Plaintiff again presented to Johnson Regional Medical Center on October 25, 2009, complaining of chest pain. (Tr. 394). Plaintiff saw K. Dunkel, APN, of Clarksville Medical Group, on November 23, 2009, and Ms. Dunkel reported spending 30 minutes counseling Plaintiff, and covered depression, anxiety, and the importance of medical compliance. (Tr. 308). She was started on Paxil and Xanax. (Tr. 308).

Plaintiff presented herself to Clarksville Medical Group on December 14, 2009 and January 8, 2010, complaining of having panic attacks. (Tr. 354-355). Plaintiff was assessed with anxiety and depression. (Tr. 354-355). By February 24, 2010, Plaintiff was reported as doing pretty well by Clarksville Medical Group and reported she was having some panic attacks at times but was learning how to deal with them. (Tr. 353). Plaintiff was assessed with anxiety. (Tr. 353).

Plaintiff began receiving counseling from Counseling Associates, Inc., on March 5, 2010, and was diagnosed as follows:

| | |
|---|---|
| Axis I: | PAD |
| Axis II: | No DX |
| Axis IV: | problems with social environment |
| Axis V: | Current GAF – 48 |

(Tr. 320).

On April 16, 2010, Plaintiff complained to Clarksville Medical Group about her chest hurting at times and also reported having some anxiety problems. (Tr. 345). She was assessed with palpitations, anxiety, chest pain, and weight loss. (Tr. 345). On April 27, 2010, Plaintiff presented to Clarksville Medical Group, complaining of having a bad cough – she was smoking less than a half a pack of cigarettes a day. (Tr. 374). She was assessed with probable allergy symptoms and anxiety, and her palpitations were reported as improved. (Tr. 344).

On June 18, 2010, Plaintiff again complained of her chest hurting, and it was reported by Clarksville Medical Group that anxiety was her big issue. (Tr. 244). She was assessed with anxiety and chest pain, and it was reported that it was believed that much of her chest

5

discomfort was anxiety. (Tr. 244). Regular stretching exercises were recommended. (Tr. 244). Plaintiff reported to Clarksville Medical Group on August 3, 2010, of having a lot of anxiety, and was encouraged to get out and exercise. (Tr. 243). She was assessed with chronic anxiety. (Tt. 243). By December 14, 2010, Plaintiff was again assessed with bronchitis and anxiety. (Tr. 241).

On June 9, 2011, Plaintiff again reported to Clarksville Medical Group that she was having quite a few panic attacks associated with shortness of breath. (Tr. 240). She was assessed with panic attacks, anxiety, and hypertension. (Tr. 240). Plaintiff again reported chest pain, along with palpitations, lightheadedness, dyspnea on exertion, and occasional nausea, to Clarksville Medical Group, on July 26, 2011. (Tr 296). She was assessed with chest pain, palpitations, persistent bronchitis, and vaginitis. (Tr. 297).

On August 2, 2011, a Mental Diagnostic Evaluation was performed by Steve A. Shry, Ph.D. (Tr. 247). At that time, Plaintiff reported taking Zoloft, Xanax, and Atenolol for two years and that it was not helping. (Tr. 247). Plaintiff also cited financial difficulties and lack of medical insurance as obstacles to treatment. (Tr. 247). Dr. Shry reported Plaintiff seemed "defensive and vague." (Tr. 248). He felt that her motivation seemed to vary in that she would appear to "quickly give up" until she was warned to "do her best." (Tr. 248). Dr. Shry estimated her intellectual functioning level to be borderline range, and Dr. Shry diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Depressive Disorder, NOS, chronic, recurrent, moderate<br>Generalized Anxiety Disorder, with panic |
| Axis II: | Borderline intellectual functioning |
| Axis V: | GAF – 50-55 |

(Tr. 249). Plaintiff reported to Dr. Shry that she was capable of handling her own hygiene and dressing without assistance, and that she was unable to drive, perform household chores and shop without assistance, due to her symptoms. (Tr. 249). Dr. Shry found that Plaintiff appeared to be mild to moderately impaired in her ability to communicate and interact in a socially appropriate manner; that she could communicate in an intelligible and effective manner; that she did not appear to be limited in her ability to cope with the typical demands of basic work like tasks when the tasks were simple, but may be mild to moderately impaired when encountering complex tasks; that Plaintiff appeared to be mild to moderately impaired in her ability to attend and sustain concentration on tasks; that she seemed to be moderately to severely impaired in her ability to sustain persistence when completing tasks; and that she seemed to be moderately impaired in her ability to complete work like tasks within an acceptable time frame. (Tr. 249).

On August 11, 2011, Dr. Stanley L. Reyenga performed a general physical examination of Plaintiff. (Tr. 253). Dr. Reyenga found all of Plaintiff's ranges of motion were normal, she had an unsteady tandem walk, and that she could perform all limb functions, except she had 60% grip in both hands. (Tr. 255-256). He diagnosed her with anxiety disorder by history; depression by history, hypertension; chest pain syndrome; bronchospasm; and a smoker. (Tr. 257). Dr. Reyenga did not assess any limitations on Plaintiff's functioning.

On August 11, 2011, Sheri L. Simon, Ph.D., completed a Mental RFC Assessment. (Tr. 260-262). She found that Plaintiff would be able to perform unskilled work and that the objective evidence did not support a marked impairment in adaptive functioning. (Tr. 262-2633). Dr. Simon also completed a Psychiatric Review Technique Report, and found that

7

Plaintiff had a mild degree of limitation in activities of daily living and a moderate degree of limitation in maintaining social functioning and in maintaining concentration, persistence, or pace, and had no episodes of decompensation. (Tr. 274).

On August 12, 2011, Dr. Bill F. Payne completed a Physical RFC Assessment. (Tr. 280-287). Dr. Payne concluded that Plaintiff would be able to perform medium work. (Tr. 287).

On September 15, 2011, Plaintiff presented to Clarksville Medical Group for follow-up on her stress test. (Tr. 289). The stress test was negative for signs of myocardial ischemia or scar; she had normal spirometry tests, and the Holter monitor was unremarkable. (Tr. 289). It was reported that she was still smoking and was down to about one pack a day. (Tr. 289). Plaintiff was assessed with hypertension, anxiety, palpitations, fatigue, and tobacco abuse. (Tr. 290).

On December 7, 2011, Dr. Ronald Davis affirmed the assessment dated August 12, 2011, and on December 8, 2011, Dr. Winston Brown affirmed the initial rating. (Tr. 306).

On March 28, 2012, Plaintiff presented herself to Johnson Regional Medical Center, complaining of chest pain. (Tr. 406). The clinical impression was anxiety related to her chest pain. (Tr. 408). A chest x-ray revealed no acute abnormality. (Tr. 412). On March 29, 2012, Plaintiff saw Dr. Sarah M. Woodruff at Clarksville Medical Group in follow up to her complaints the previous day. (Tr. 337). Dr. Woodruff decided to set her up for a thirty day event monitor and to obtain a TSH, T3, T4 and an echocardiogram. (Tr. 337). Dr. Woodruff also increased the dosage of her Alprazolam and Zoloft. (Tr. 337). The Doppler evaluation performed on April 3, 2012, was a normal study. (Tr. 470).

On April 24, 2012, Plaintiff denied any chest pain or other symptoms to Clarksville Medical Group. (Tr. 336). On May 15, 2012, Johnson Regional Medical Center reported that during the interval April 1 through April 24, 2012, there was nonsustained ventricular tachycardia. (Tr. 421).

On August 22, 2012, Plaintiff presented to Clarksville Medical Group with left knee pain and swelling. (Tr. 334). X-rays showed a little spurring in the central joint space. (Tr. 334). She was assessed with left knee pain and swelling and possible joint effusion, because there was some crepitus. (Tr. 334). It was recommended that Plaintiff lose weight to take the pressure off of her knee. (Tr. 334). Plaintiff again reported left knee swelling to Dr. Woodruff on August 28, 2012, and was unable to bend her knee completely at that time. (Tr. 332). She was assessed with bursitis in her joint, joint effusion, and fluid was removed from her left knee. (Tr. 332).

Subsequent to the hearing, on October 1, 2012, Plaintiff saw Dr. Russell Allison, of Arkansas Orthopaedic Institute, complaining of knee pain in both knees, and it was reported that she smoked one pack of cigarettes a day. (Tr. 518). Plaintiff was assessed with pain in joint; lower leg; tear of medial cartilage or meniscus of knee, current; and an MRI of her left knee was ordered. (Tr. 519). On October 15, 2012, Dr. Allison diagnosed Plaintiff with a tear of medial cartilage or meniscus of knee. (Tr. 522).

On April 17, 2013, a CT soft tissue of Plaintiff's neck with contrast revealed a left-sided thyroid mass corresponding to palpable abnormality, and it was recommended she follow-up with an ultrasound. (tr. 528). Subsequent to the ALJ's decision dated April 18, 2013, on April 25, 2013, an ultrasound of Plaintiff's head, neck/ thyroid revealed a 4 cm. cyst, left lobe of thyroid, containing a few fairly thin-walled septations. There were multiple

solid nodules in both lobes of the thyroid, large solid nodule 15 mm. in diameter on the right. The findings were consistent with thyroid cyst and probable benign solid nodules. A six month follow-up sonography was recommended. (Tr. 529).

### IV.     Discussion:

In his decision, the ALJ briefly addressed the Dr. Allison's October 15, 2012 findings by stating:

> Finally, however, the latest treatment notes indicated that the claimant complained of both left and right knee pain, had a tear of the medial cartilage or meniscus of the knee, and walked with a limp, but that she still had full range of motion, no instability, normal motor functioning , and that her sensation was grossly intact.

(Tr. 21). The ALJ failed, however, to include Dr. Allison's additional note that Plaintiff had full range of motion "with pain," and that there was mild global tenderness and patella tendon tenderness. (Tr. 521). Dr. Allison also reported that he had discussed activity restrictions and therapy with Plaintiff, but nothing further was mentioned about restrictions. This raises a question in the Court's mind as to whether Dr. Allison might have restricted some of Plaintiff's activity.

The Court also notes that Dr. Reyenga, upon physical examination of Plaintiff, found Plaintiff had 60% grip in both hands. (Tr. 256). It does not appear that the ALJ considered this finding.

In addition, the ALJ did not discuss the left-sided thyroid mass that was discovered on April 17, 2013, at Johnson Regional Medical Center. (Tr. 528). Subsequent to the ALJ's decision, findings of a thyroid cyst were reported. The Appeals Council considered the additional evidence and concluded it did not provide a basis for changing the ALJ's decision. (Tr. 2). When the Appeals Council has considered material new evidence and nonetheless

declined review, the ALJ's decision becomes the final action of the Commissioner. The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997). Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence.

The Physical RFC that is contained in the record is dated August 12, 2011, wherein Dr. Payne found Plaintiff could perform medium work. (Tr. 287). This was before Plaintiff's knee problems were diagnosed, and before the thyroid cyst was discovered. Based upon the diagnosis given by Dr. Allison, an orthopedist, as well as the thyroid cyst that was found, the Court is of the opinion that this matter should be remanded to the ALJ in order for him to obtain a Physical RFC Assessment from an examining physician, in order to make sure that Plaintiff's knee impairment, grip strength, and thyroid cyst are taken into consideration when the ALJ makes his RFC determination. The ALJ should then re-evaluate his RFC determination.

## V.    Conclusion:

Accordingly, the Court recommends that this matter be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 25th day of August, 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE